UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER MORTON,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　Respondent. | Case No. 2:10-cv-00519-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Christopher Morton ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision denying Petitioner's application for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Dkt. 1.) The Court has fully reviewed and considered the Complaint (hereinafter "Petition") and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on October 2, 2008, alleging that he had been disabled and unable to work since August 14, 2007, due to Type I diabetes and diabetic neuropathy. This application was denied initially and on reconsideration, and a hearing was held on December 17, 2009, before Administrative Law Judge ("ALJ") Robert S. Chester. The ALJ issued a decision finding Petitioner not disabled on January 6, 2010, and Petitioner timely requested review by the Appeals Council. The Appeals Council denied Petitioner's request for review on August 20, 2010, and the ALJ's decision became the final decision of the Commissioner. Petitioner timely filed an appeal of the Commissioner's final decision to this Court on October 19, 2010. (Dkt. 1.)The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the December 17, 2009 hearing, Petitioner was represented by counsel and testified on his own behalf. A vocational expert appeared telephonically at the hearing and offered testimony concerning Petitioner's ability to perform past relevant work or other work that exists in significant numbers in the national economy. Based on the ALJ's questions, the vocational expert opined that Petitioner would not be able to perform past relevant work, but that jobs existed in the national economy which Petitioner would be able to perform such as ticket taker, agricultural sorter, and injection molding machine setter. (AR 46.)

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner was born on October 20, 1982, and was 27 years of age at the time of the hearing. Petitioner did not graduate from high school (discontinuing his education after the eighth grade). Petitioner's prior work experience includes work as a kitchen helper, horticultural worker, green chain off-bearer, construction worker, farm worker, and hand sander.

## SEQUENTIAL PROCESS

The Commissioner follows a sequential five-step evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity after the alleged onset date of August 14, 2007. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner's diabetes and accompanying neuropathy were severe impairments within the meaning of the regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. A finding that one or more of a claimant's impairments meets or equal a listing presumptively demonstrates disability. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221-22 (9th Cir. 2010). The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. Specifically, the ALJ analyzed Petitioner's impairments under Listing 9.08 (*Diabetes Mellitus*) and found "no evidence of A) neuropathy demonstrated by significant

**MEMORANDUM DECISION AND ORDER - 3**

and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; B) acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests; or C) retinitis proliferans." (AR 13.)[1]

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that Petitioner had the residual functional capacity ("RFC") to perform light work. (AR 13.) Consistent with this conclusion, the ALJ found that Petitioner could lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds. (*Id*.) The ALJ also found that Petitioner could sit for six hours and stand or walk for six hours in an eight-hour workday, but would require a sit/stand option. (*Id*.) Finally, the ALJ concluded that Petitioner could occasionally do fine feeling and should avoid concentrated exposure to extreme temperatures and hazards such as unprotected heights or unprotected moving machinery. (*Id*.)

---

[1] Effective June 7, 2011, diabetes mellitus falls under Listing 9.00 (Endocrine Disorders). Section 9.00 indicates that endocrine disorders now are evaluated under the listings for other body systems. For example, diabetic ketoacidosis, which results from severe insulin deficiency and can affect various body systems, may be evaluated under Listings 4.00, 5.00, 11.00, or 12.00. Similarly, chronic hyperglycemia, which is longstanding abnormally high levels of blood glucose and may disrupt nerve and blood vessel functions, may be evaluated under Listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00.

**MEMORANDUM DECISION AND ORDER - 4**

At step four, based upon Petitioner's RFC and the testimony of the vocational expert, the ALJ found that Petitioner was unable to perform his past relevant work. (AR 17.) If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At this last step, considering Petitioner's age, education, work experience, and RFC, the ALJ found that Petitioner could perform work existing in significant numbers in the national economy. In reaching this conclusion, the ALJ noted the positions identified by the vocational expert: ticket taker, agricultural sorter, and injection molding machine setter. (AR 18-19.) Because the ALJ found that Petitioner could perform work existing in significant numbers in the national economy, he concluded that Petitioner was not disabled within the meaning of the Social Security Act. (AR 19.)

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental

**MEMORANDUM DECISION AND ORDER - 5**

impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or

**MEMORANDUM DECISION AND ORDER - 6**

reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner contends the ALJ erred in his assessment of Petitioner's RFC and challenges the ALJ's decision on three grounds. First, Petitioner claims that the ALJ improperly attributed little weight to the opinion of nurse practitioner Joyce Wilson. Specifically, Petitioner argues that, because Ms. Wilson actually treated Petitioner, and her opinion is the only one in the record from a treating source, Ms. Wilson's opinion should have been given greater weight than the opinions of two consulting physicians from Disability Determination Services ("DDS"). Second, Petitioner claims that the ALJ improperly discounted a RFC questionnaire submitted by Dr. Steven Puffer. Third, Petitioner claims that the ALJ improperly attributed little weight to a letter submitted by Petitioner's uncle, Dr. Ken Gramyk, who neither treated nor examined Petitioner but submitted the letter based upon his personal observations of Petitioner.

As a result of these alleged errors, Petitioner claims that the ALJ's RFC determination is not supported by substantial evidence. Petitioner also argues that the opinions of nurse practitioner Wilson, Dr. Puffer, and Dr. Gramyk–which the ALJ found to be unsupported by the objective medical evidence in the record and inconsistent with Petitioner's activities–should have triggered the ALJ's duty to fully develop the record. Each of these assignments of error will be discussed below.

**MEMORANDUM DECISION AND ORDER - 7**

1.      **Nurse Practitioner Wilson**

Petitioner argues that the ALJ improperly discounted the opinion of Joyce Wilson, a nurse practitioner at Kaniksu Health Services in Sandpoint, Idaho. Ms. Wilson began treating Petitioner for diabetes in the summer of 2008. The record contains Ms. Wilson's treatment notes and a residual functional capacity questionnaire dated February 10, 2009. The treatment notes reflect that Petitioner initially presented with Type I diabetes in poor control in June of 2008. (AR 208-09.) The notes indicate that Petitioner began experiencing problems with diabetes as a child and was hospitalized as a child for ketoacidosis. (AR 207.) Ms. Wilson diagnosed Petitioner with Type I diabetes complicated by neuropathy and retinopathy. (AR 207-209.)

In the RFC questionnaire, Ms. Wilson provided the following opinions concerning Petitioner's limitations: Petitioner could sit for a total of 4 hours and stand/walk for a total of 4 hours in an 8-hour workday (AR 220); Petitioner would need to take two to three unscheduled breaks lasting 15 to 30 minutes during the workday (AR 221); Petitioner could frequently lift/carry 10 pounds and occasionally lift/carry 20 pounds (AR 221); Petitioner would likely miss four or more days of work per month due to his condition (AR 222); Petitioner would need "frequent [blood sugar] monitoring-multiple injects 5x/day" (AR 222); Petitioner would need to take unscheduled breaks throughout the workday for insulin or hypoglycemia (AR 220); and that Petitioner was "[i]ncapable of even 'low stress' jobs." (AR 220.)

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ gave little weight to Ms. Wilson's RFC assessment. (AR 16.) In rejecting Ms. Wilson's RFC assessment, the ALJ noted that, as a nurse practitioner, Ms. Wilson was not an acceptable medical source and that her "opinion [was] not supported by substantial medical evidence of record." (*Id.*) Petitioner claims that the ALJ's rejection of Ms. Wilson's opinion constitutes error. In his opening brief, Petitioner argues that Ms. Wilson should have been considered an acceptable medical source. (Dkt. 16 at 5, citing *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996)). However, following the Commissioner's response brief, Petitioner concedes in his reply that nurse practitioners are not acceptable medical sources under the current federal regulations. (*Pet'r's Response Brief* at 1, Dkt. 18) ("Counsel acknowledges the Government is correct that the opinion of a family nurse practitioner cannot be found to be an 'acceptable medical source,' as defined under Code of Federal Regulations, Section 404.1513(a).") This is correct; nurse practitioners are not "acceptable medical sources" under the regulations. 20 C.F.R. § 404.1513(a) and (d)(1).

Notwithstanding the above concession, Petitioner continues to argue that Ms. Wilson's opinion should have been given greater weight and that the ALJ erred in his treatment of the opinion. Even if the Court were inclined to agree with Petitioner that Ms. Wilson's opinion should have been afforded greater weight, because the ALJ provided sufficient reasons for giving the opinion little weight, the Court will not disturb the ruling on appeal.

Under Section 423 of the Social Security Act, the Commissioner of Social Security is required to consider all of the evidence available in a claimant's case record, including

**MEMORANDUM DECISION AND ORDER - 9**

evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); *see also* 20 CFR § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not acceptable medical sources. *See* 20 CFR § 404.1502 and 416.902. The regulations provide that "[i]n addition to evidence from the acceptable medical sources," evidence from other sources should be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d). This includes evidence from nurse practitioners such as Ms. Wilson. 20 CFR § 404.1513(d)(1).

An ALJ may discount the opinion of a non-acceptable medical source by providing reasons that are "germane" to that source. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

Here, the ALJ stated that Ms. Wilson's opinion "is not supported by substantial medical evidence of record and is based heavily on the claimant's self-reports." (AR 16.) These findings are supported by the record. While the medical records indicate that Ms. Wilson conducted physical exams, such as taking the pulse of Petitioner's dorsalis pedis artery and making visual observations of Petitioner's physical condition, there is no evidence in the record that any examination was conducted by her to determine the extent of Petitioner's alleged neuropathy. Similarly, a review of Ms. Wilson's progress notes

**MEMORANDUM DECISION AND ORDER - 10**

makes clear that her assessment of Petitioner's neuropathy was based upon Plaintiff's self-complaints. These have been found to be adequate reasons for rejecting an opinion. *See Bayliss*, 427 F.3d at 1216 (opinion may be rejected that is "inadequately supported by clinical findings"); *see also*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible").

The ALJ found Petitioner's testimony concerning the severity of his limitations not credible to the extent they conflicted with the assessment that Petitioner could perform light work.[2] The ALJ made this adverse credibility finding based in part upon Petitioner's daily activities, which included acting as the primary caretaker of his two young daughters, continuing to hunt for deer, fishing, preparing meals for himself and his daughters, doing some inside cleaning and some outside chores, gathering firewood, mowing the lawn, and watering plants. (AR 15-16.) The ALJ also stated that "the record shows the claimant has been non-complaint with taking his medications and with testing his blood sugars on a regular basis." (AR 16.) These are appropriate reasons for rejecting a claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (listing daily activities as appropriate reason for adverse credibility finding); *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007) (failure to follow prescribed treatment may be used as

---

[2] Petitioner does not challenge the ALJ's adverse credibility finding, but the Court briefly addresses the finding because it is relevant for the purpose of assessing the ALJ's rejection of Ms. Wilson's opinion.

**MEMORANDUM DECISION AND ORDER - 11**

sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated). Because the ALJ found Petitioner's testimony not credible, the ALJ could properly reject Ms. Wilson's opinions based upon Petitioner's self-reports. *Tommasetti*, 533 F.3d at 1041.

### 2. Dr. Puffer's Opinion

Petitioner argues that the ALJ improperly attributed little weight the opinion of Dr. Steven Puffer. Like nurse practitioner Wilson, Dr. Puffer saw Petitioner while he was a patient at Kaniksu Health Services in Sandpoint, Idaho. Also like nurse practitioner Wilson, Dr. Puffer submitted a residual functional capacity questionnaire. (AR 283-86.) Dr. Puffer's RFC assessment mirrors the questionnaire submitted by nurse practitioner Wilson. For instance, the first line of both questionnaires indicate one hour, weekly to monthly visits to adjust insulin would be necessary. (*Compare* AR 283 ("1 hour, weekly to monthly visits to adjust insulin") *with* AR 219 ("1 hour visits. Weekly–monthly visits to adjust insulin").) Both check off the exact same eleven symptoms and both state as clinical findings: "erratic [blood sugar] w[ith] frequent, unexplained, hypoglycemic unawareness[,] severely painful diabetic neuropathy[,] gastroparesis[, and] severe depression." (*Id.*) Further review of the two questionnaires demonstrate that they indicate the same limitations.

**MEMORANDUM DECISION AND ORDER - 12**

The ALJ gave little weight to Dr. Puffer's RFC assessment, finding Dr. Puffer's assessment inconsistent with the medical records and that, "[i]t also appears Dr. Puffer copied on to his assessment the limitations and notations provided on the assessment by Ms. Wilson, which suggests he has had no personal interaction with claimant upon which to formulate his own opinion of the claimant's level of functioning." (AR 16-17.) Petitioner argues that the ALJ's treatment of Dr. Puffer's RFC assessment constituted error. The Court does not agree.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

**MEMORANDUM DECISION AND ORDER - 13**

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion about a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Similarly, an ALJ may properly reject a physician's opinion where the opinion is given in a check-off format without any explanations for the conclusions, and not otherwise supported by the record. *Crane v. Shalala*, 76 F.3d 252, 253 (9th Cir. 1996) (affirming ALJ's rejection of three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions").

Here, the record does not include any treatment notes from Dr. Puffer. And the records from Kaniksu Health Services indicate that all of Petitioner's visits related to diabetes were with nurse practitioner Wilson. The record does indicate that Dr. Puffer examined Petitioner on two occasions, but those examinations concerned skin-related problems. (AR 226, 229.)

The Court cannot conclude that the ALJ's assessment of Dr. Puffer's RFC questionnaire was improper. The ALJ's conclusion that Dr. Puffer was not a treating physician is supported by the record. Similarly, the ALJ's conclusion that Dr. Puffer's RFC questionnaire was based upon nurse practitioner Wilson's treatment notes and not on

**MEMORANDUM DECISION AND ORDER - 14**

the doctor's own interaction with Petitioner was a reasonable conclusion based upon the record. There are no treatment or progress notes in the record from Dr. Puffer and he did not provide any explanations for the conclusions contained in his RFC assessment. The ALJ's reasons for rejecting Ms. Wilson's RFC assessment–lack of medical evidence, inconsistent daily activities, and Petitioner's failure to take his medications and check his blood sugar on a regular basis–also apply to Dr. Puffer's assessment. Moreover, Dr. Puffer's RFC assessment was inconsistent with two assessments provided by consulting doctors. Based on the above, the Court finds that the ALJ provided specific and legitimate reasons for giving little weight to Dr. Puffer's RFC questionnaire. Thus, the treatment of Dr. Puffer's opinions was not improper.

### 3.     Dr. Gramyk's Opinion

Petitioner's uncle, Dr. Ken Gramyk, submitted a letter in support of Petitioner's claim for disability. (AR 281-82.) In his letter, Dr. Gramyk makes clear that he has never treated Petitioner. He states, however, that "I am his Uncle and as both a doctor and his uncle, I have additional insight into his condition that validates his request for disability." (AR 281.) Dr. Gramyk goes on to explain Petitioner's history of diabetes since Petitioner was a child and that Petitioner's symptoms have "greatly affected his ability for physical work and added challenges to day-to-day life." (AR 281.)

Dr. Gramyk also related the following personal observations:

> We have had Christopher help us with projects and have witnessed a number of events where his blood sugar rapidly dropped during working and resulted in potential injury or

**MEMORANDUM DECISION AND ORDER - 15**

> seizures or stroke like symptoms had he been alone or unattended. We have witnessed Christopher become unable to talk, communicate, or follow instruction becoming almost catatonic and immobilized. Without the immediate administration of sugar this condition (hypoglycemia or insulin shock) could become life threatening.

(AR 281.) Dr. Gramyk also noted that Petitioner "has had several admissions to the hospital for intensive care treatment on an emergency basis for life threatening complications of Diabetic Ketoacidosis." (*Id.*) Ultimately, Dr. Gramyk opined that Petitioner's "case is severe enough that consideration for disability would be appropriate." (AR 282.)

The ALJ gave Dr. Gramyk's opinion little weight. (AR 17.) The ALJ noted that, "[a]lthough Dr. Gramyk is an acceptable medical source, he is not a treating or examining physician." (*Id.*) Petitioner argues that the ALJ improperly discounted Dr. Gramyk's opinion and that the opinion should have been given greater weight. Because Dr. Gramyk's opinion was contradicted by two consulting agency doctors, the ALJ was required provide "specific and legitimate reasons" for accepting these over Dr. Gramyk's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). The Court finds that the ALJ satisfied this standard.

The regulations set forth several factors the Commissioner uses in weighing medical opinions. 20 C.F.R. § 404.1527(d). These factors include the "supportability" of the opinion, 20 C.F.R. § 404.1527(d)(3), and the "consistency" of the opinion with the record as a whole. § 404.1527(d)(4). Concerning supportability, the regulations note that

**MEMORANDUM DECISION AND ORDER - 16**

"[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." § 404.1527(d)(3). "The better an explanation a source provides for an opinion, the more weight we will give that opinion." *Id*. Along these same lines, an ALJ may reject a medical source's opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson*, 359 F.3d at 1195.

Here, the ALJ listed several reasons for giving Dr. Gramyk's opinion little weight. The ALJ first noted that Dr. Gramyk's opinions were not based upon an actual physical examination. (AR 17.) He then noted that, although Dr. Gramyk indicated Petitioner had been admitted to the hospital several times for emergency life threatening complications of diabetic ketoacidosis, "[t]here is no evidence in the record the claimant has been treated with diabetic ketoacidosis since the alleged date of onset, nor is there any emergency room or urgent care records suggesting the claimant has required any type of emergency treatment for his diabetes." (AR 17.) The ALJ also took issue with Dr. Gramyk's opinion that the loss of feeling in a person's hands makes working extremely challenging, stating "there has been no testing of the claimant's ability to grasp or grip and there is no evidence of any pinprick testing to determine how much, if any, sensory loss the claimant has experienced." (*Id*.)

Additionally, the ALJ noted that part of Dr. Gramyk's opinion described generally the symptoms commonly experienced by individuals suffering from neuropathy and were not necessarily specific to Petitioner. (*Id*.) ("Dr. Gramyk indicates neurological

**MEMORANDUM DECISION AND ORDER - 17**

impairments such as the claimant's are often described as wearing gloves and stockings on your hands and feet; however, no such description has been made by the claimant. This is a clinical description of what neuropathy can feel like, not necessarily a description of how the claimant is feeling.") The ALJ also found Dr. Gramyk's opinions concerning the severity of Petitioner's limitations inconsistent with Petitioner's role as the primary care giver for his two children. (AR 17) ("It seems the claimant would not have been able to care alone for his two young girls if these events [referring to seizures or stroke-like symptoms] occurred on a regular basis.").

Based on the above, the Court concludes that the ALJ provided specific and legitimate reasons supported by the record for giving Dr. Gramyk's opinion little weight. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding ALJ's rejection of treating and examining psychologists' opinions in favor of non-examining medical advisor where the treating and examining doctors did not explain their conclusions and the claimant's daily activities were inconsistent with the opinions); *see also*, *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding ALJ's rejection of treating physician's opinion where claimant's testimony conflicted with the treating physician's opinion).

Petitioner also argues that various statements contained in Dr. Gramyk's letter (and in the RFC assessments submitted by Dr. Puffer and Ms. Wilson) should have triggered the ALJ's duty to fully develop the record and that the ALJ's failure to seek additional evidence constituted error. Specifically, Petitioner states that, "[i]f there is question as to

**MEMORANDUM DECISION AND ORDER - 18**

whether the Petitioner had neuropathy, or the severity of his neuropathy is at question, then the ALJ had a duty to develop the issue, not ignore the condition." (Dkt. 18 at 4.) While Petitioner is correct that the ALJ in a social security case has a "duty to fully and fairly develop the record," *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001), the Court finds that the duty was not abrogated in this case.

The duty to develop the record is triggered where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Here, the evidence was neither ambiguous nor inadequate. The ALJ discounted the opinions of Dr. Puffer, Ms. Wilson, and Dr. Gramyk on multiple grounds, including: the absence of objective medical evidence; testimony and reports of Petitioner's daily activities inconsistent with their opinions; and, contradictory opinions supplied by two consulting agency doctors. This is fully consistent with the federal regulations and their direction on how medical opinions will be evaluated. *See* 20 C.F.R. § 404.1527(d)(3). Having fully reviewed the record, the Court finds that the evidence before the ALJ was not inadequate to allow for a proper evaluation of Petitioner's claim and that the ALJ's duty to fully develop the record was not violated in this case.

**MEMORANDUM DECISION AND ORDER - 19**

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.



DATED: March 12, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**